May it please the Court, my name is Mark Caldwell. I'm here to represent Mary Dettlo this morning in this Social Security case. I would ask the Court's permission to reserve two minutes of my time for rebuttal. May, but you have to help us keep track of your time, because that's the entire time you need. I will do that. I just want to let the Court know that I plan to have rebuttal, I suppose, might be the better way to put it. Although you might be relieved to know I don't plan to take the full 20 minutes, by myself anyway. This case involves several issues. I'm going to not talk about the latter three, unless the Court obviously has questions, and focus on the first issue. And the first issue is the district court's remand for further administrative proceedings, rather than for determination of benefits. I know the Court's familiar with the facts, but let me touch on them briefly, because the facts in this case are pretty simple. During the relevant period of time, we have two psychological evaluations. The first psychological evaluation is one ordered by the State agency, by Dr. Piatka. And that ---- Kennedy, I don't even know the facts. We know what you want us to do. You want us to remand for benefits. Now, how on this record can we ---- I mean, not for benefits. You want us to say she's entitled, compute and give. Correct. How can we do it on this record? I think it's ---- I think this record's a good record for that. What you have is an uncontradicted assessment by the examining psychologist, Dr. House. You have uncontradicted vocational expert. This is the Commissioner's vocational expert, by the way, that says if we take that evidence as true, then that individual could not perform sustained work activity. And it was only as recently as July of this year in the Widmark case, which I cite in my Rule 28 letter, that this Court said that when insufficient reasons are given for rejecting an examining physician's or psychologist's assessment, then that assessment is credited as true as a matter of law. There's a law ---- No, but the question we look at is, would enhancement of the record be beneficial? You have to say to us, no, it wouldn't be. So don't remand for that purpose. I do say ---- How on this record can we ---- can we agree with you? Well, the question that I would ask would be, what could we reasonably expect to happen on remand that hasn't already happened? We've had the psychological evaluation. We've had the vocational expert testimony. We've had the medical expert testimony at hearing. And ---- Counsel? Yes, Judge. Didn't the ---- was the psychological evaluation completed? In the sense that you're asking that Ms. Ditlow stormed out and was angry and went into a fit of rage, that's what you're referring to? Exactly, and would not cooperate in terms of completing the test. So how can we say that everything's been done that should have been done? Well, I think Dr. Jasinski's testimony at the hearing, he was the psychologist called by the administrative logic to testify, was helpful in that regard, because Dr. Jasinski said that's exactly the kind of behavior that you would expect from someone with a borderline personality disorder. So when you look at the unique characteristic of that diagnosis, borderline personality disorder, which isn't something that we see a lot in these cases. Usually we see depression or anxiety or whatnot. The fact that the psychological evaluation in the sense that the MMPI, Minnesota Multiphasic Personality Inventory, wasn't completed doesn't take anything away from the results of the assessment given by Dr. House. And in fact, according to the Commissioner's own expert witness at the time of the hearing, supports Dr. House's assessment. So I don't think that you're going to be looking at something that can really be enhanced upon remand that you don't have now. Did you have another question? Well, but is that a foregone conclusion that the medical testimony can't be squared because the other doctors who examined her had totally different impressions? Okay, well, thank you, because that's something I want to hit hard. There isn't a conflict here. There isn't something to be resolved. And again, Dr. Jasinski talked about this a fair amount at the hearing. He's the psychologist who testified. He specifically said, the one evaluator, Dr. Piotka, did a mini mental status examination. And what is a mini mental status examination? And the phrase he used was, you go through that thing, bing, bing, bing, bing, bing. And it's a series of 25 questions that you ask the person. And it's meant to discover whether the person has cognitive limitations. All well and good. And when Dr. Jasinski was asked, are cognitive limitations something that you would expect to see in a borderline personality disorder, he specifically said, no. So there is no conflict to be resolved. Dr. Piotka didn't talk about a borderline personality disorder. Dr. House did. And I want to add one other thing, if I may. There's a reason for that, I think. The borderline personality disorder on that assessment that Dr. Jasinski referred to, bing, bing, bing, bing, bing, you go through these questions, is pretty short. You're done in a fairly short period of time. Dr. House had this claimant in his office and subjected her to the stresses that brought out the personality disorder. And that's the difference between those two things. Was Dr. House the doctor you retained? Yes. And let me ask you this. What was the onset date? You'll have to let me look at my brief. I know why you're asking that question, because the commissioner talks about remand for determination of the onset date. And I think what's important... Right. Okay. The onset date is November 1999. And I think... Where did the... Counsel, where in the record did the physician set the onset date? Are you talking about Dr. House? Yes. Okay. He did not. However, again, I think we have to deal with the unique nature of the personality disorder. That was scored on what's called AXIS-2 under the Diagnostic and Statistical Manual of Mental Disorders. And the AXIS-2 is for longstanding problems. You would see AXIS-2 would have borderline personality disorders. You would see, not that this is relevant, but you would see something like mental retardation on AXIS-2. And I did append to my brief the excerpt from the Diagnostic and Statistical Manual of Mental Disorders that describes the longstanding nature of borderline personality disorders. Who was the treating physician? There is no treating physician. There is no treating physician. And that's something, too, that's important. Well, how does that cut? I have seen, I mean, I'm just speaking as one judge and just from personal memory. Yes. But I have seen a number of cases where we have said that benefits need to be where the decision of the treating physician has been ignored. Yes. And reviewing physicians have been relied on when our law is very clear that you can't ignore it without giving very specific reasons. But this is not a treating physician. There is no treating physician. And there seems to be an absence of discussion of the reviewing physician who was retained by the applicant. Is that right? And I don't see how it would be the law would require, in that circumstance, the award of the benefits as opposed to what the district court did, as I understand it, which was to remand and to explain how you come to this because you've ignored one of the doctors. Okay. First of all, the rules in terms of evaluating treating physicians and examining physicians regarding the standards, clear and convincing, specific and legitimate, are the same. And that's the Lester case that was decided by this court in 1996. But you've hit on something that's important here. And it's another reason why I think remand for further proceedings isn't going to be particularly helpful. And we talked about it at the hearing in this case. Lack of treatment, and Dr. Jasinsky said this, this is the commissioner's expert, lack of treatment would be exactly what you would expect with someone with a borderline personality disorder. And what you would see would be emphasis on the physical problems, not the mental problems, because someone with a borderline personality disorder is entirely entirely is too strong a word, is largely unselfaware. They don't know what's going on. As far as they're concerned, the world's crazy, but not them. And that's why this case is interesting, because it does have this unique diagnosis that we don't see that often. But lack of treatment, far from detracting from this case, actually is a key factor in showing that this is a borderline personality disorder. And, you know, we've got three volumes for our excerpts of record here. Aren't you going to have a chance to argue that? I already did. Look at the transcript of the hearing. I already talked about that at the hearing. Absolutely. And it wasn't successful, and now you're going to get another shot. Isn't that how this is essentially structured? What happened here wasn't that the argument was rejected. What happened is the argument was ignored. As a matter of fact, the entire diagnosis of borderline personality disorder was flat, 100 percent ignored by the judge. And what the commissioner wants here is another bite at the apple. Now, what's important, and it's in the excerpts of record, it's attached to my complaint, is this was brought out to the Appeals Council. The Appeals Council was informed of this. If you want a definitive ruling based on this record, somebody could rule that she's not entitled to benefits, and it's over. You don't want that. And that's what that hasn't isn't what happened. The showing, she may be able to make a showing, and that's one of the reasons this was remanded. But if you say, all right, we don't want to do another thing, rule, I don't know that you want that to happen. Well, the district court has already said the ALJ decision was unsupportable and has remanded, and the commissioner hasn't cross-appealed that. So I think the worst that can happen is, is I get a remand for further proceedings. That's – if I get a remand for further proceedings, that means I've lost here. Okay. Kagan. That's what you've got in the district court, isn't it? That's what I've got, exactly. So I've already got it, and I don't think it, with all due respect, don't think it can be taken away at this point. But, you know, I think we need to ask ourselves, what can be accomplished? What do we have that we couldn't have? We can't have vocational expert testimony because we've got that. We can't have medical expert testimony because we've got that. We can't have another examination because we've got that. What is to be done? Have all the proceedings in the agency been stayed pending this appeal? Is anything going forward there? No. This is an appeal of a final decision of the commissioner. So, no, it's an unfavorable decision by the commissioner that went up to the district court, succeeded at the district court to the extent of a remand. But the district court's mandate hasn't issued? Oh, no. No. That's on hold pending this. Right. Yes. Right. Now, this business about onset, I think it's important. You know, this wasn't part of our proceedings below. Okay? This is a first-time argument. Be all that as it may, if you look at the cases that the commissioner relies upon, Morgan and DeLorme, you see in those cases there was something to talk about. There were preexisting medical records that were from a physical point of view, like a hospitalization, where even though the hospitalization was for physical problems, there were indications of anxiety and depression and things like that. So this Court said, well, look, here's something you could look at, you haven't looked at, and you should look at. Fine. We don't have that here. We have as complete a record as we can hope to have, given the unique nature of this type of problem. And we have a long set of precedents for remand, for determination of benefits. I'm not going to cite too many cases, but you know them. But just in a nutshell, so that your adversary can respond, it's Dr. House's testimony or evidence that is so important? Is that correct? I have to ask you to repeat that. It's Dr. House's evidence that's so important? Crucial. Okay. Could you just in a nutshell, and then you can sit down and use the rest of your time. Thank you. Just in a nutshell, so that the government can respond, could you just tell us in two sentences exactly what that testimony was that was ignored? Or evidence was? Dr. House's crucial diagnosis that he indicated was the primary diagnosis was borderline personality disorder. That's sentence one. Sentence two is the borderline personality disorder resulted in unstable, impulsive, immature, rage-like behavior that no employer would tolerate. And I'm going to ask for a sentence three. That led to vocational expert testimony that a person so limited couldn't sustain any more. Thank you. Thank you, Judge. Good morning, Your Honors. May it please the Court. Catherine Liu appearing on behalf of the Commissioner of Social Security. I wanted to address Judge Ferris's concern about why we need to remand this because the record is incomplete. One of the biggest things about this record that's incomplete is that ALJ found her incredible. He did not credit her testimony in this record. I don't know how you can reconcile that fact. Furthermore, with regards to Dr. House's opinion, it's inconsistent with three other opinions, three other examining positions. You're answering his question. How, if we say rule on the record as it stands now, he could get nothing. Because on the record as it stands now, there's reason to question whether it's necessary to have a remand in the record. He says it's complete. If we look at it as complete, then we'd say they were wrong to say remand and she's I don't think we can do that. No, I'm saying that it's incomplete, that it needs to go back. Yes, it needs to go back. Yes, that's correct, Your Honor. Counsel, do you agree with opposing counsel's position that the ALJ ignored Dr. House's testimony? I don't think he ignored Dr. House's testimony. He omitted the diagnosis of borderline personality disorder for that reason that it would be appropriate as the district court decided to remand it for further proceedings because that part wasn't developed. That's why I think that is appropriate. Did I answer your question? Yes. Okay. Why couldn't you just reach an agreement on this case? I'm sorry? I mean, you're resisting this and saying that it has to go, but you're conceding that it has to go back. There's no cross-appeal here saying that the district court was wrong. Why are we hearing why can't the parties get together here and just agree that something's going to happen? There's maybe an onset date. Why can't you settle it? I have no problem remanding it back for further proceedings, yes. No, I'm just saying why can't you settle it? Why can't you just make some agreement? I'm just curious. You agree that it has to go back. You don't disagree that the district court was wrong. No, I don't. Okay. I mean, you agree that the district court was wrong and so far was correct insofar as it went. Yes, I am. The only question is whether or not it should have gone farther.  Farther than in awarding benefits rather than just the district court. I don't agree that it should be awarded benefits, but I do agree that it needed to be further developed. And you can't be sure what's going to happen when it's redeveloped, when it goes back. I can't be sure, but you can be sure that the reason that the petitioner doesn't want it to go back because the result could be negative. It could be negative for the petitioner when the record is fully developed. Correct. But I was just asking why you haven't said whether it did. I was just curious as to why this seems like a perfect case to just settle rather than going on for years, filing briefs, doing all of this. I think the reason. I would agree with you. Go ahead. You can answer. Okay. You would agree with that? I would agree with remanding it for further. I would agree to settling with that. For remand. No, I don't think he's going to settle for a remand. He's got that. But I'm not going to agree to, I can't remand for further, I mean, remand for payment because this record's not fully developed. Okay. I understand. I understand you. I'll just go through my points really quickly, Your Honor. Dr. House relied on the claimant's, on his observations of the claimant and her history. He didn't rely on the test results because she didn't finish them. She stormed out after 20% of the MPI exam. She didn't, she either didn't exercise full effort when she was being tested or she didn't complete the different tests. With regards to Dr. Jasinski, he noted in the, in testimony at the hearing that he couldn't reconcile Dr. House's opinions with the other three. Ms. Lue, you're, you're arguing as to why it ought to be remanded because you didn't cross appeal. You must have gathered at least that a percentage of the court thinks that remand is, is, is what's. Well, I'll, I'll just sit down then. I'll, I'll submit them. I'm not suggesting you won. You don't want to, to. But it just seems a shame because the record is, you, you, we all agree now that the record is at least incomplete. That, that this is, it's been what, five years since, four years since the ALJ's decision. And two years since the district court ruled. Yes. But I'll just go over my points just really briefly. That with respect to the, the fact that Dr. House said that plaintiff met a listing. I'm not sure how reliable that is given that it was based on her subjective presentation and the ALJ found that she's not credible. With respect to the VE testimony, again, the limitations that were presented to the VE have to be, are presented on the hypothetical have to be based on limitations that are verifiable from this record and they're not. And with regards to the subpoena argument, I'm not really sure that, about that argument. Because although the ALJ stated that he didn't give these two reviewing opinions less weight. These two reviewing physicians actually found that plaintiff had no severe impairment. Which is completely opposite of what the ALJ found. And with respect to the RFC, there's no basis for that. And with regards to the onset date, we don't know what that is. Thank you. I don't have too much more, but let me make a couple quick comments. Credibility wasn't an issue in the court below. And there's a reason for that. And this statement sounds quite strange, but let me follow up with an explanation. A person suffering from a borderline personality disorder isn't credible. Now, what I mean by that is not that they are lying, not that they are malingering, not that they are making things up. But it's really funny. In Dr. House's examination, this person denied having problems with anger. And she was screaming and she was pounding on the table and she was in a fit of rage. It's not credible to say I don't have a problem with anger. Credibility is not an issue. When the government's counsel talked about Mary's testimony, there was none. Mary didn't utter a single word during this hearing. We went directly to Dr. Jasinski, directly to Dr. Russo, directly to Dr. Bluth. There's nothing there. I've already talked about it, so I'm not going to beat it over the head too much here. But inconsistent with other examinations, there is no inconsistency here. When we talk about the borderline personality not being developed, that's just wrong. Dr. Jasinski gave lengthy, detailed testimony saying that the borderline personality was supported by the evidence. And there's nothing that we can do on remand that we haven't done already. And that's why this Court should remand for determination. Thank you. Thank you, counsel. The case just argued is submitted for decision. Before hearing the last case on the calendar, the Court will take a brief five-minute recess.
judges: Schroeder, Farris, Rawlinson